# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **JOSEPH MICHAEL ANDREWS** | **CIVIL ACTION NO. 06-1438** |
| **VS.** | **SECTION P** |
| **WARDEN JOHN GUNTER, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on August 23, 2006, by *pro se* plaintiff Joseph Michael Andrews. When he filed his complaint, plaintiff was an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He was incarcerated at the Elayn Hunt Correctional Center, St. Gabriel, Louisiana[1] and he complained that he was the victim of excessive force while he was incarcerated at the East Carroll Parish Detention Center (ECPDC) on November 30, 2005. He named ECPDC Warden John Gunter, East Carroll Parish Sheriff Mark Shumate, ECPDC Corrections Officers Mike Ouzts[2], Lieutenant Frazier, Captain Frazier, Charles Hicks, and Ricky Hart; the LDOC, the ECPDC, the East Carroll Parish Sheriff's Office, and the State of Louisiana as defendants. He prayed for $10 million in damages and the prosecution of all officers involved.

This matter has been referred to the undersigned for review, report, and recommendation

---

[1] Plaintiff has since notified the court that he was released from LDOC custody. After living for a time in Baton Rouge, he recently moved to Addis, Louisiana where he currently resides. [doc. 9 and doc. 12]

[2] Plaintiff refers to this defendant as "Outz," however, the Disciplinary Reports indicate that the defendant spells his name "Ouzts." [doc. 12, p. 6]

1

in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE.**

*Statement of the Case*

Plaintiff's original complaint raised three separate claims arising on separate dates in different locations. He complained that he was the victim of excessive force on November 30, 2005, while he was incarcerated at ECPDC; he complained that he was wrongfully convicted of disciplinary rules violations at Forcht-Wade Corrections Center (FWCC) two weeks later; and he complained that he was the victim of excessive force while he was imprisoned at David Wade Corrections Center (DWCC) in August 2006. Plaintiff later filed separate complaints concerning the claims arising at FWCC and DWCC [see *Joseph Michael Andrews v. Forcht Wade Correctional Center*, No. 5:06-cv-1734 and *Joseph Michael Andrews v. David Wade Corrections Center*, No. 5:06-cv-1736] and therefore, those claims were stricken from this complaint on November 9, 2006. [doc. 4] On that same date, plaintiff was ordered to amend his complaint to cure specific defects noted on initial review. Among other things, the undersigned observed, "It appears that a grant of relief on plaintiff's excessive force claims would necessarily call into question the validity of the disciplinary determination of guilt, and therefore his present complaint may be premature. See *Hudson v. Hughes*, 98 F.3d 868 (5th Cir. 1996) (civil rights claim that officers used excessive force during arrest could not be maintained where plaintiff's conviction of battery of officer, based on that incident, had not been invalidated because a finding in plaintiff's favor would necessarily imply the invalidity of plaintiff's arrest and conviction for battery of an officer." [doc. 4, pp. 7-8] Based on these concerns, plaintiff was

2

directed to "... amend his complaint to provide documentary evidence associated with the disciplinary hearing to enable the court to make the appropriate assessment of these claims..." [*id*., pp. 8-9]

On March 23, 2007, plaintiff amended his complaint and provided copies of Disciplinary Reports filed by some of the ECPDC corrections officers named as defendants. [doc. 12] His original complaint [doc. 1] and this amended complaint [doc. 12] allege the following:

On November 30, 2005, just two weeks prior to plaintiff's release date, ECPDC guards conducted a "shake-down" of the lock-down dorm where plaintiff was being held. Plaintiff and his fellow inmates were escorted from the dorm and remained outside for approximately thirty minutes while the shake-down was conducted. Upon their return, plaintiff and his fellow inmates discovered that the dorm had been "ramshacked" – the inmates' personal property was scattered and their mattresses were thrown to the floor.

Plaintiff returned to his bunk, "squared away" his property, then lay down to read. His fellow inmates, however, refused to reorganize their property and demanded to speak with Warden Gunter who was absent from the facility.

Approximately 20 minutes later, ECPDC guards raided the dorm and started screaming at the inmates to lie down on the floor. The inmates complied; plaintiff remained in his bed. Deputy Mike Ouzts brought a police dog into the dorm and, Ouzts, the dog, and Officer Ricky Hart proceeded through the dorm cursing and yelling at the inmates. Plaintiff was ordered from his bed to the floor and he immediately complied, placing his head on top of his hands. Ouzts ordered plaintiff to put his head on the floor and plaintiff complied. Ouzts then kicked plaintiff in the top of the head. Plaintiff felt threatened and responded to the kick by jumping up and

3

fighting with Ouzts, Hart, and Charles Hicks. Plaintiff struck Ouzts twice and then was in turn struck by Hart. Hart then grabbed plaintiff in a "head-lock" while Hicks grabbed him from behind and both pulled plaintiff to the floor.

Plaintiff was removed from the dorm to the yard where he was "swarmed" by Lt. Frazier, Capt. Frazier, Hart, Hicks and several other guards who started punching plaintiff in the head and face while plaintiff attempted to block their blows. Plaintiff was eventually forced to lie on the ground. Ouzts commanded the dog to bite plaintiff on his left arm, back, rump, and right leg. This attack resulted in 15 permanent scars.

Plaintiff was then escorted to the intake room. Upon his arrival, Lt. Brown grabbed plaintiff by the throat and began to choke him while he threatened to kill him. He then threw plaintiff into the intake room where he proceeded to slam plaintiff and punch him in the face. Plaintiff was then forced to lie down on the floor once again where he was hand-cuffed then sprayed with mace while being kicked, walked on and stepped on. Brown removed plaintiff's handcuffs and picked him up from the floor and began to threaten him with additional violence.

Plaintiff was again forced to the floor where he was assaulted by an unnamed officer who stuck a paint-ball gun behind plaintiff's ear and threatened to shoot him. He then shot plaintiff in the back with two "54 caliber powdered mace paint balls."

The guards continued to kick, curse, and threaten plaintiff and his fellow inmates. An unknown "heavy set guard" entered and began "way laying" plaintiff in the head. He then slammed plaintiff to the desk. Plaintiff was forced to the floor once again and guards continued to walk on him for a period of thirty minutes. An unnamed guard entered and twisted plaintiff's arm behind his back.

At some point plaintiff and his fellow inmates were sent to the nurse's station. While plaintiff was seated in the intake room, Warden Gunter arrived. Gunter punched plaintiff in the mouth twice and injured plaintiff's lip. Plaintiff and others were then transported to River Bend Detention Center where they were placed in lock-down cells. On the following morning, plaintiff was transported to Lake Providence, Louisiana, where his injuries were recorded.

Two weeks later, plaintiff was transferred to FWCC. He was charged with 4 disciplinary rules violations ("write-ups") as follows –

(1) Deputy Michael Ouzts charged plaintiff with one count of "Disobedience, Aggravated, Schedule B" and alleged, "On the above date [11/30/05] and at the approximate time [2:50 p.m.], inmate Joseph Andrews was given a direct verbal order by Deputy Michael Ouzts to put his head back on the floor. Inmate Joseph Andrews mumbled a remark and then jumped up off the floor." [doc. 12, p. 7]; and

(2) Deputy Michael Ouzts also charged plaintiff with "Defiance, Schedule B" and alleged "On the above date [11/30/05] and at the approximate time [2:51 p.m.] Deputy Michael Ouzts was assisting Lt. Craig Frasier in the New Dorm 4 when inmate Joseph Andrews jumped off the floor and struck Officer Ouzts with a closed fist in the right eye. Officer Ouzts had five lacerations to the eye area as a result of the incident." [doc. 12, p. 6];

(3) Lieutenant Ricky Hart charged plaintiff with "Defiance, Schedule B" and alleged "On the above date [11/30/05] and at the  approximate time [2:55 p.m.], Officer Ricky Hart was attempting to restrain inmate Joseph Andrews when inmate Joseph Andrews hit Officer Hart in the left temple with a closed fist." [doc. 12, p. 5];

(4) Correctional Officer Charles Hicks charged plaintiff with "Defiance, Schedule B (and)

5

Property Destruction, Schedule B" and alleged, "On the above date [11/30/05] and at the approximate time [2:56 p.m.], I, Officer Charles Hicks, was assisting Officer Ricky Hart in attempting to restrain Inmate Joseph Andrews. Inmate Joseph Andrews swung at me, Officer Hicks, with a closed fist knocking my eyeglasses off of my face. My eyeglasses were broken in the incident." [doc. 12, p. 8]

On December 15-16, 2005 disciplinary board hearings were convened at FWCC and plaintiff was found guilty as charged of all four disciplinary rules violations. As a result, 180 days of accumulated "good time" were forfeited and plaintiff was sentenced to extended lock-down. [doc. 12, pp. 5-8]

Plaintiff appealed these convictions to the LDOC Secretary. [doc. 12, pp. 9-12] On some unspecified date his appeal was denied. [See *Joseph M. Andrews v. Forcht-Wade Corrections Center*, No. 5:06-cv-1734 at doc. 1-1, paragraph II(C)(3).]

*Law and Analysis*

*1. Initial Review Pursuant to 28 U.S.C. §§1915 and 1915A*

When a prisoner[3] sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A;

---

[3] The nature of a complaint is determined by the status of the plaintiff at the time of filing, which is the "triggering event" which imposes the PLRA (Prison Litigation Reform Act, P.L. No. 104-134, 110 Stat. 1321 (1996)) provisions on prisoners, but not on non-prisoners. See, *Haynes v. Scott*, 116 F.3d 137 (5th Cir.1997). Plaintiff was a prisoner when he filed this complaint therefore, this civil rights suit is subject to the terms of the PLRA's screening provisions (28 U.S.C. §§1915 and 1915A) despite plaintiff's subsequent release.

28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).  A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint.  Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991).  A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original and amended complaints  have been reviewed.  Plaintiff's pleadings,

along with the exhibits provide a detailed description of the factual basis of his claim along with his theories of liability with respect to each named defendant. Further amendment would serve no useful purpose.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

## *2. Heck/Balisok Considerations*

Plaintiff claims that the defendants used excessive force against him during the incident that arose following the "shake-down" of the ECPDC lock-down dormitory. Plaintiff admits that he initially failed to comply with the guards' order to lie face down on the floor and claims that he instead remained in his bed; he also admits that he used physical force against the prison guards when they entered the lock-down dorm, but he maintains that his actions were in self-defense and that he simply reacted to their initial unprovoked use of force. He also admits, and the exhibits submitted with his amended complaint establish, that he was charged with four separate disciplinary rules violations as a result of the incident. He also admits, and the exhibits establish, that he was convicted of these rules violations at a disciplinary board convened at the FWCC on December 15-16, 2005, two weeks (more or less) after the incident complained of. Further, he admits, and the exhibits establish, that as a result of the disciplinary convictions, plaintiff forfeited 180 days of accumulated good time credits.

As shown above, plaintiff was charged with and ultimately convicted of three counts of Defiance, Schedule B. That offense is defined in relevant part as follows: "No inmate shall commit or threaten physically or verbally to commit <u>bodily harm upon an employee</u>... No inmate

shall obstruct or resist an employee who is performing his proper duties." Louisiana Administrative Code, Title 22, Part I, §365(D). He was also convicted of Aggravated Disobedience which is defined as follows: "Inmates must obey direct verbal orders cooperatively and promptly; not debate, argue, or ignore them before obeying ... Even orders the inmate believes improper must be obeyed ..." Louisiana Administrative Code, Title 22, Part I, §365(F). According to the Disciplinary Reports the incident in question began when plaintiff disobeyed Deputy Ouzts's order "to put his head back on the floor" and instead "jumped up off the floor." [doc. 12, p. 7] After he "jumped up off the floor" plaintiff "struck Officer Ouzts with a closed fist in the right eye" causing "five lacerations" to the officer's eye area. [doc. 12, p. 6] Thereafter, when Officer Ricky Hart attempted to restrain plaintiff, he "hit Officer Hart in the left temple with a closed fist." [doc. 12, p. 5] Then, when Officer Hicks attempted to assist Officer Hart, plaintiff swung a closed fist at the officer and broke the officer's eye-glasses. [doc. 12, p. 8]

In the wake of *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997), the *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994) doctrine is now applied to the prison disciplinary setting. In *Heck,* the United States Supreme Court held that in order for a civil rights plaintiff to recover damages for an allegedly unconstitutional arrest, conviction, or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, he must first prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under

9

§1983.

It appears that a grant of relief on plaintiff's excessive force claims in this case would necessarily call into question the validity of the disciplinary determination of guilt, and therefore, his present complaint is premature. See *Hudson v. Hughes*, 98 F.3d 868 (5th Cir.1996) (civil rights claim that officers used excessive force during arrest could not be maintained where plaintiff's conviction of battery of officer, based on that incident, had not been invalidated because a finding in plaintiff's favor would necessarily imply the invalidity of plaintiff's arrest and conviction for battery of officer).

Plaintiff's pleadings, considered in conjunction with the disciplinary charges filed by Dy. Ouzts, Lt. Hart, and Officer Hicks reveal that his excessive force claims involving those officers and Lt. Frasier are so entangled with the subsequent disciplinary proceedings that success on the former would implicate the validity of the latter. *Hudson v. Hughes, supra.* His pleadings also establish that his disciplinary case has not been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*." Consequently, plaintiff's excessive force claims lack an arguable basis in law until the *Heck/Edwards* conditions have been met. *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir.1996); see also, *Woods v. Smith*, 60 F.3d 1161, 1165 n. 16 (5th Cir.1995)(citing *Ordaz v. Martin*, 5 F.3d 529 (5th Cir.1993)(unpublished)).

### 3. Excessive Force Claims

Further, in order to state a claim for excessive force, plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied

maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis*, but not necessarily significant. See *Hudson v. McMillian*, 503 U.S. 1, 6, 10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir.1999); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997). The factors to be considered in making this determination are as follows: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez*, 163 F.3d at 923. Plaintiff was specifically directed to amend his complaint to describe the injury he sustained as a result of the alleged violations of his rights. [doc. 4, p. 6; p. 10] The only injury plaintiff claims he sustained were unspecified injuries to his "...left arm, back, rump, and right leg from the dog bites..." He implies that these dog bites caused "...about 15 permanent scars..." [doc. 12, p. 2, p. 4]; however, he does not otherwise suggest that he was injured by any of the blows administered by the various defendants or by the "mace paint balls" shot at his back.

With regard to the need for force, the disciplinary records establish that plaintiff initially refused to comply with the directives of the corrections officers and then used force against the officers in question. The officers' perceived threat was reasonable; they were therefore justified in their own use of force to protect themselves and to restore order. Further, it appears that the force applied to plaintiff was reasonable under the circumstances. In other words, plaintiff has not shown that the complained of force was applied maliciously and sadistically to cause harm; the evidence he has submitted tends rather to establish that the force applied was a good-faith effort to maintain or restore discipline. Finally, plaintiff has neither alleged nor shown that the

11

injuries he suffered were more than *de minimis*.

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted all in accordance with the provisions of 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) and (2).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 29th day of March, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE